**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Christopher Sengenberger, | Case No. 09-cv-2796 |
| Plaintiff, | |
| v. | **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Credit Control Services, Inc. | |
| Defendant. | |

Now comes Plaintiff in opposition to Defendant CCS's Motion for Summary Judgment, which should be denied because CCS has failed to account for genuine issues of material fact that support judgment as a matter of law in Plaintiff's favor. In support hereof, Plaintiff states as follows:

**I.     Introduction**

At issue in this case are nine telephone calls that CCS placed to Plaintiff's cellular telephone number while attempting to collect a debt allegedly owed to Quest Diagnostics, Inc., during which CCS played prerecorded messages. In Counts Eighteen through Twenty-Six of the complaint, Plaintiff asserts that CCS violated 47 U.S.C. § 227(b)(1)(A) because the prerecorded messages were left without his "prior express consent".[1] In Counts Twenty-Seven through Thirty-Five, Plaintiff asserts that CCS violated 47 C.F.R. 64.1200(B)(1) because the prerecorded messages did not state CCS's legal name. Finally, in Counts Thirty-Six through Forty, Plaintiff asserts that CCS violated 47 C.F.R. 64.1200(B)(2) because five of the prerecorded messages did not provide CCS's telephone number.

---

[1] Counts One through Seventeen were previously dismissed by stipulation of the parties. *See* Docket # 11.

In its Motion for Summary Judgment, CCS requests the Court to enter judgment in its favor as to all claims contained in Counts Eighteen through Forty of the Complaint, but completely fails to address Counts Twenty-Seven through Forty, limiting its arguments to Plaintiff's claims under 47 U.S.C. § 227(b)(1)(A). For this reason alone, CCS's motion should be denied, at least in part. With respect to Counts Eighteen through Twenty-Six, CCS has failed to show that it had Plaintiff's prior express consent to place the telephone calls to Plaintiff's cellular telephone number. In particular, CCS's argument that Plaintiff had consented to receive the telephone calls because he had previously provided his doctor with his cellular telephone number fails both as a matter of policy and because it runs contrary to the very authority on which CCS relies in making this argument. Finally, genuine issues remain for trial with respect to these counts because Plaintiff revoked any consent he may have provided when he sent CCS a letter requesting that CCS cease its collection efforts. For these reasons, discussed in further detail below, CCS's motion for summary judgment must be denied.

## II.     Summary Judgment Generally

A party filing a motion for summary judgment has the initial burden of demonstrating that there is no question of material fact with respect to an essential element of the nonmoving party's case. <u>Cody v. Harris</u>, 409 F.3d 853, 860 (7th Cir. 2005), citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986) ("the burden on the moving party may be discharged by 'showing'…that there is an absence of evidence to support the nonmoving party's case."). Once the moving party's initial burden is met, "the nonmoving party must submit evidence that there is a genuine issue for trial in order to survive the motion for summary judgment". <u>Cody</u>, 409 F.3d at 860. Where, as here, the parties have filed cross-motions for summary judgment, a party may assert in its own motion that there are no issues of material fact preventing entry of judgment in its favor

and at that same time assert in its response to the opposing party's motion that there are issues of material fact that should prevent the entry of judgment against it. See e.g., <u>Walling v. Richmond Screw Anchor Co.</u>, 154 F.2d 780, 784 (2d Cir. 1946)

### III. CCS Failed to Satisfy its Burden with respect to Counts Twenty-Seven through Thirty-Five

In Counts Twenty-Seven through Thirty-Five of the complaint, Plaintiff asserts that CCS violated 47 C.F.R. 64.1200(B)(1) because the prerecorded messages did not state CCS's legal name. *See Docket # 1, ¶ 45 – Plaintiff's Complaint*. In its motion for summary judgment, CCS says nothing whatsoever regarding this regulation nor does CCS ever assert that there is an absence of evidence to support Plaintiffs claim thereunder. As such, CCS has failed to satisfy its burden with respect to Counts Twenty-Seven through Thirty-Five of the complaint and its motion for summary judgment with respect to these counts should be denied.

To the extent that Plaintiff must submit any evidence showing that there is a genuine issue for trial with respect to these Counts, Plaintiff states as follows:

1. In each of the prerecorded messages CCS left for Plaintiff, CCS identifies itself only as "Credit Collection Services". *See Docket # 18-1, ¶ 8 - Declaration of Bruce Shapiro – Exhibit 1 to Defendant's Rule 56.1 Statement of Material Facts*.

2. CCS uses the "d/b/a" "Credit Collection Services" but its legal name is "Credit Control Services, Inc." *See Docket # 14-6 - CCS's State of Illinois Collection Agency License – Exhibit D to Plaintiff's Motion for Summary Judgment.*

3. Pursuant to 47 C.F.R. 64.1200(b)(1), all prerecorded messages must state the caller's legal name either instead of, or in addition to, the caller's "d/b/a" or alias. <u>Rules and Regulations Implementing the Telephone Consumer Protection Act (TCPA) of 1991;</u>

3

Final Rule, FR Doc 03-18766, 68 Federal Register 143, pg 44163. Therefore, CCS violated 47 C.F.R 64.1200(b)(1) when it left the prerecorded messages for Plaintiff.

**IV.     CCS Failed to Satisfy its Burden with respect to Counts Thirty-Six through Forty**

In Counts Thirty-Six through Forty of the complaint, Plaintiff asserts that CCS violated 47 C.F.R. 64.1200(B)(2) because five of the prerecorded messages did not provide CCS's telephone number. *See Docket # 1, ¶ 47 – Plaintiff's Complaint*. In its motion for summary judgment, CCS says nothing whatsoever regarding this regulation nor does CCS ever assert that there is an absence of evidence to support Plaintiffs claim thereunder. As such, CCS has failed to satisfy its burden with respect to Counts Thirty-Six through Forty of the complaint and its motion for summary judgment with respect to these counts should be denied.

To the extent that Plaintiff must submit any evidence showing that there is a genuine issue for trial with respect to these Counts, Plaintiff states as follows:

1. Five of the prerecorded messages that Plaintiff received from CCS did not provide CCS's telephone number. *See Docket # 20 – Exhibit A to Plaintiff's Motion for Summary Judgment*; *See also Docket # 14-3, ¶ 5 – Affidavit of Plaintiff Christopher Sengenberger*

2. Pursuant to 47 C.F.R. 64.1200(b)(2), all prerecorded messages must state clearly the telephone number of the caller. Therefore, CCS violated 47 C.F.R 64.1200(b)(2) when it left those five prerecorded messages for Plaintiff.

**V.     There are Genuine Issues for Trial with respect to Counts Eighteen through Twenty-Six**

   A.     <u>CCS did not have Plaintiff's "prior express consent" to call Plaintiff's cellular telephone number</u>

4

In Counts Eighteen through Twenty-Six of the complaint, Plaintiff asserts that CCS violated 47 U.S.C. § 227(b)(1)(A) by calling Plaintiff's cellular telephone number and leaving prerecorded messages without his prior express consent. *See Docket # 1, ¶ 43 – Plaintiff's Complaint*. In its motion for summary judgment, CCS admits that it called Plaintiff's cellular telephone number and left prerecorded voice messages, but argues that CCS did have Plaintiff's prior express consent to place those calls. Specifically, CCS claims that it had Plaintiff's prior express consent to call Plaintiff's cellular telephone number because Plaintiff had earlier provided his cellular telephone number to his doctor, who then provided his cellular telephone number to Quest Diagnostics, who then provided his cellular telephone number to CCS, which CCS used to collect a debt allegedly owed to Quest Diagnostics. In support of this argument, CCS relies upon a Declaratory Ruling of the Federal Communications Commission, which addresses the issue of prior express consent as it relates to calls placed for purposes of debt collection. *See* In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling, FCC 07-232, CG Docket No. 02-278 (December 28, 2007).

Contrary to CCS' assertions, however, the Declaratory Ruling does not in fact support CCS's argument that it had Plaintiff's prior express consent to call Plaintiff's cellular telephone number. The Declaratory Ruling clearly states: "We emphasize that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." Id. at ¶ 10. Neither of these conditions is met in this case. It is undisputed that the creditor that hired CCS to call Plaintiff's cellular telephone is Quest Diagnostics, Inc. *See Docket # 18-1, ¶ 4 - Declaration of Bruce Shapiro – Exhibit 1 to Defendant's Rule 56.1 Statement of Material Facts*.

5

Plaintiff denies, and CCS never alleges, that Plaintiff provided his cellular telephone number to Quest Diagnostics. *See Docket # 14-3, ¶ 20 – Affidavit of Plaintiff Christopher Sengenberger*. Thus, if we consider the plain meaning of the Declaratory Ruling, there is no prior express consent because neither the first nor second condition is satisfied.

CCS, however, ignores the plain meaning and effectively argues that by providing his cellular telephone number to his doctor, Plaintiff consented to receive calls at that number from any person or entity that would call him in regards to health care and treatment requested by his doctor. Such an extension of the doctrine of "express consent" is unfounded. Indeed, CCS provides no legal authority in support thereof. Furthermore, as a matter of policy, such a holding would defeat the purpose of the TCPA to protect consumers from the nuisance of unwanted automated and prerecorded telephone calls. Plaintiff trusted his doctor and therefore gave his doctor consent to call his cellular telephone number. At that time, Plaintiff was not even aware of the existence of CCS and there is no reason to think that Plaintiff would have wanted to later receive prerecorded telephone messages from CCS regarding a debt, the legitimacy of which Plaintiff would in fact dispute. *See Docket # 14-3, ¶¶ 6-8 – Affidavit of Plaintiff Christopher Sengenberger*. To be sure, the prerecorded calls from CCS were unwanted and a nuisance and fall squarely within the conduct the TCPA sought to regulate.

CCS makes its own policy argument to support its contention that Plaintiff's consent to receive telephone calls at his cellular telephone number from his doctor should extend to CCS. Specifically, CCS argues that such a holding "promotes the public policy of efficient healthcare services and quality treatment towards patients" and goes on to say that "to hold otherwise would disrupt a standard practice of performing vital services in connection with medical treatment of patients." Plaintiff cannot understand how a debt collector's ability to leave prerecorded

6

telephone messages on a consumer's cellular telephone has anything to do with the performance of vital healthcare services. If CCS is right, a debt collector in CCS's position would be able to collect a healthcare related debt from a consumer in Plaintiff's position in a myriad of ways, one of which would be the use of prerecorded messages directed to the consumer's cellular telephone. If CCS is wrong, a debt collector in CCS's position would still be able to collect a healthcare related debt from a consumer in Plaintiff's position in a myriad of ways. The only difference is that the debt collector would be prohibited from leaving prerecorded messages on the consumer's cellular telephone. CCS's assertion that such a result would negatively impact healthcare is tenuous at best.

  B.  <u>Plaintiff revoked any "prior express consent" CCS may have had to call his cellular telephone number</u>

Finally, even if CCS is correct that it had Plaintiff's prior express consent to call his cellular telephone, genuine issues remain for trial as to Plaintiff's revocation of that consent. Prior express consent may be revoked by further instruction from the consumer. *See* <u>In re Rules and Regulations</u>, FCC 07-232 at ¶ 9 ("persons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, *absent instructions to the contrary*" (emphasis added), *citing* <u>Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, CC Docket No. 92-90, 7 FCC Rcd 8752 (1992); *See also* <u>Schneider v. Susquehanna Radio Corporation</u>, 581 S.E. 2d 603, 607 (Ga. App. 2003) (holding that a consumer "may sever any business relationship, i.e., revoke consent to any future solicitations, by requesting that they not receive further calls from a telemarketer" in a case involving another provision of the TCPA applicable to telemarketers).

In this case, Plaintiff mailed CCS a letter via certified mail on December 26, 2009 disputing the alleged debt and instructing CCS to "stop all collection efforts immediately". *See Docket # 14-4, Page 1 – Plaintiff's Letter to CCS – Exhibit B to Plaintiff's Motion for Summary Judgment*. CCS received this letter on December 29, 2009. <u>Id</u>*. at pages 2-3*. Thus, even if CCS had Plaintiff's prior express consent, by the time CCS received Plaintiff's letter, Plaintiff had clearly given "instructions to the contrary" and revoked his consent. CCS placed eight of the nine telephone calls at issue in this case after it had received the letter from Plaintiff. *See Docket # 14-3, ¶¶ 10-17 – Affidavit of Plaintiff Christopher Sengenberger; See also Docket # 14-8, Plaintiff's Telephone Records – Exhibit E to Plaintiff's Motion for Summary Judgment*. As such, at least eight of the nine telephone calls were placed to Plaintiff's cellular telephone number without Plaintiff's consent.

**VI.    Conclusion**

For the reasons stated above, there are genuine issues as to material facts and CCS is not entitled to judgment as a matter of law. Therefore, CCS's Motion for Summary Judgment should be denied.

RESPECTFULLY SUBMITTED,

Legal Helpers, P.C.

By: /s/ Timothy J. Sostrin
    Timothy J. Sostrin
    Bar ID # 6290807
    233 S. Wacker, Suite 5150
    Chicago, IL 60606
    Telephone: 866-339-1156
    Email: tjs@legalhelpers.com
    Attorneys for Plaintiff

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2010, I electronically filed a copy of this Response to Defendant's Motion for Summary Judgment and a copy of the same will be sent to the following by the Court's CM/ECF system:

Daniel R. Degen
HINSHAW & CULBERTSON
ddegen@hinshawlaw.com

/s/ Timothy J. Sostrin

9