**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER SENGENBERGER, | ) | |
| | ) | Case No.:  09 CV 2796 |
| Plaintiff, | ) | |
| | ) | Judge Zagel |
| v. | ) | |
| | ) | Magistrate Judge Schenkier |
| CREDIT CONTROL SERVICES, INC. d/b/a | ) | |
| CREDIT COLLECTION SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S MOTION TO CLARIFY AND/OR**
**RECONSIDER MEMORANDUM OPINION AND ORDER (ECF #30)**

Defendant, Credit Control Services, Inc. d/b/a Credit Collection Services ("CCS"), respectfully requests that this Court clarify the memorandum opinion and order (ECF #30) entered on May 5, 2010.  CCS is not challenging the finding of violations under the Telephone Consumer Protection Act ("TCPA").  However, CCS requests that the Court clarify its finding that the calls in question were made "willfully or knowingly."  More specifically, CCS asks the Court to clarify whether the Court found that the alleged violations of the TCPA were made "willfully or knowingly" by CCS because (1) CCS contacted Plaintiff after a purported revocation of consent to be contacted or (2) CCS did not provide its legal name "Credit Control Services, Inc." in its pre-recorded messages pursuant to FCC regulations.  In the event of the former, CCS respectfully requests that this Court, pursuant to Federal Rule of Civil Procedure 59(e), reconsider its finding that the alleged violations were committed "willfully or knowingly."  In the event of the latter, the Order and record do not contain a single fact showing that CCS "willfully or knowingly" violated the regulations as required by 47 U.S.C. § 227(b)(3).  Therefore, pursuant to Federal Rule of Civil Procedure 59(e), CCS would request that the Court

6567250v1  900715  65872

reconsider its finding that the alleged violations of the regulations were committed "willfully or knowingly."  In support of this motion, CCS states as follows:

## I.  PROCEDURAL BACKGROUND

1.      Plaintiff filed the instant action on May 6, 2009 alleging that CCS violated the Fair Debt Collection Practices Act 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, ("TCPA").  (Cmplt., ECF #1)

2.      The parties reached settlement on the FDCPA claims (Counts One through Seventeen) and those claims were dismissed on July 23, 2009 pursuant to the settlement and a Stipulation to Dismiss.  (Stipulation, ECF #11).

3.      Plaintiff's remaining causes of action (Counts Eighteen through Forty) arise under the TCPA.  (Cmplt., ECF #1)

4.      Counts eighteen through twenty-six alleged that CCS violated 47 U.S.C. § 227(b)(1)(A) by leaving messages without prior consent.

5.      Counts twenty-seven through Thirty-Five asserted that CCS violated 47 C.F.R. 64.1200(B)(1) by not stating its legal name in its prerecorded messages.

6.      Counts thirty-six through forty allege that CCS violated 47 C.F.R. 64.1200(B)(2) because five prerecorded messages did not provide CCS's telephone number.

7.      Both parties filed cross-motions for summary judgment and subsequently fully briefed the motions.

8.      On May 5, 2010, this Court entered a Memorandum Opinion and Order (ECF #30) granting in part and denying in part both parties' cross-motions for summary judgment.

6567250v1  900715  65872

9.      This Court granted summary judgment as to counts nineteen through thirty-five for Plaintiff.  This Court granted summary judgment as to counts thirty-six through forty for Defendant.  In regard to count eighteen, this Court ordered supplemental briefing on the issue of consent to be filed by May 21, 2010.  Finally, this Court found that CCS's calls to Plaintiff were made "willfully or knowingly." (ECF #30)

10.      The parties have resolved count eighteen through settlement and are in the process of finalizing settlement documents.  (ECF # 32)

## II.      LEGAL STANDARD

CCS is seeking to clarify the Court's memorandum opinion and order dated May 5, 2010. (ECF #30).  Based upon that clarification, CCS may seek  for the Court to reconsider its findings and rulings in this matter pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e)").

A motion to alter or amend the judgment pursuant to Rule 59(e) allows the movant to bring to the Court's attention manifest errors of law or fact or newly discovered evidence.  *See United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010).  Manifest error is the "wholesale disregard, misapplication, or failure to recognize controlling precedent."  *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).  A Rule 59(e) motion is not a "vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could have and should have been presented to the district court prior to the judgment."  *Resnick*, 594 F.3d at 568.  Whether to grant a Rule 59(e) motion "is entrusted to the sound judgment of the district court."  *Matter of Prince*, 85 F.3d 314, 324 (7th Cir. 1996).  Effective December 1, 2009, the filing deadline for a Rule 59(e) motion is 28 days from the date of judgment.

6567250v1  900715  65872

### III.    ARGUMENT

CCS requests that the Court clarify the following discrete issue presented in ECF #30 -- whether the alleged violations of the TCPA were made "willfully or knowingly" by CCS because (1) CCS contacted Plaintiff after a purported revocation of consent to be contacted or (2) CCS did not provide its legal name "Credit Control Services, Inc." in its pre-recorded messages.

This Court's Order stated:

> …Although neither the TCPA nor the FCC regulations define the terms "willfully or knowingly", courts have generally interpreted willfulness to imply only that an action was intentional. *Smith v. Wade*, 461 U.S. 30, 41 n.8 (1983).  While the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation."  In *Dubsky v. Advanced Cellular Communications, Inc.*, No. 2008 cv 00652, 2004 WL 503757, at *2 (Ohio Com. Pl. Feb. 24, 2004), the court found that in the context of the TCPA, the term acting "willfully" means that "the defendant acted voluntarily, and under its own free will, regardless of whether the defendant knew that it was acting in violation of the statute.  Defendants argue that a finding of "willfully" or "knowingly" is an issue for the trier of fact. *Pollock v. Bay Area Credit Services, LLC*, 2009 WL 2475167 (S.D. Fla. Aug. 13, 2009).  In *Pollock*, the court found that genuine issues of material fact existed.  That is not the case here.  There is no dispute as whether the Defendants intentionally made the contested phone calls to Plaintiff.  Defendants have put forth no facts to contest the assertion that any of the nine disputed phone calls were made willfully or knowingly.  Accordingly, I find that Defendants knowingly and willfully made the phone calls.
>
> (ECF #30, pp. 11-12).

This Court found that all nine of the phone calls made by CCS were made "willfully or knowingly." (ECF #30, p. 12)  However, it did not address which of the alleged violations were committed "willfully or knowingly."   The Court's finding that the phone calls were made "willfully or knowingly" is problematic because there is not a question if CCS made the phone calls; it did.  However, to have a "willful or knowing" violation there has to be something more

4

than just simply placing the telephone calls or else every call made would be classified as an intentional, "willful or knowing" call.

In this situation, a "willful or knowing" violation plausibly may have be found if there was evidence that (1) CCS made telephone calls to Plaintiff when it absolutely knew that it shouldn't be making the calls or (2) CCS knowingly changed its legal identity in violation of the FCC Regulations.  However, facts like this do not exist in the evidence presented to the Court.  And therefore, CCS respectfully requests that this court clarify its reasoning as to the finding that CCS "willfully or knowingly" made the phone calls.  This distinction will provide guidance as to how both Parties move forward with this litigation in how the Parties are to assess damages.

**1.     CCS Provided Evidence Showing That It Did Not "Willfully or Knowingly" Contact Plaintiff After A Purported Revocation of Consent, Therefore This Court Should Reconsider Its Findings (If Applicable).**

This Court found that CCS did not have consent to make collection phone calls to Plaintiff after December 29, 2008.  (ECF #30, p. 7).  Supporting this finding, the Court relied on a letter purportedly sent by Plaintiff to CCS on December 26, 2009.  Plaintiff purportedly sent his December 26th letter via certified mail.  As evidenced by Plaintiff's submission of a confirmation record, <u>something</u> was received and signed for by CCS' Troy Delgado on December 29, 2009.  The record, however, does not establish: (1) if the December 26th letter was enclosed in the envelope sent to and received by CCS and (2) assuming, *arguendo*, the letter was sent, if the information contained in the letter was sufficient to revoke consent to be called.

From the initial pleading filed by CCS in this matter, CCS has unequivocally stated that it has no record of the letter that Plaintiff purportedly sent to CCS directing CCS to cease collection efforts.  The record is replete with evidence supporting this:

5

a.     <u>CCS' Answer and Affirmative Defenses (ECF #9) states:</u>

18.    On or around December 26, 2008, Plaintiff sent Defendant a letter via certified mail in which the Plaintiff notified Defendant that Plaintiff disputed the debt and instructed Defendant to stop all collection efforts within five days of the Defendant's receipt of the letter.

**<u>ANSWER:</u>   Defendant has no record of a December 26, 2008 letter from Plaintiff to Defendant, therefore, at this time, Defendant denies the allegations contained in paragraph 18 of Plaintiff's Complaint.**

19.    This letter also instructed Defendant to provide Plaintiff with certain information that would verify that Plaintiff owed the debt.

**<u>ANSWER:</u>   Defendant has no record of a letter from Plaintiff to Defendant, therefore, at this time, Defendant denies the allegations contained in paragraph 19 of Plaintiff's Complaint.**

20.    Defendant received Plaintiff's letter on or around December 29, 2008.

**<u>ANSWER:</u>   Defendant has no record of receipt of a letter from Plaintiff to Defendant, therefore, at this time, Defendant denies the allegations contained in paragraph 20 of Plaintiff's Complaint.**

b.     <u>CCS' Response to Statement of Material Facts (ECF #23) states:</u>

(10)    On December 26, 2009 Plaintiff mailed Defendant a letter via certified mail disputing the alleged debt and instructing Defendant to cease further telephone calls to Plaintiff. *See* Plaintiff's Affidavit and Exhibit B.

**<u>RESPONSE:</u> Admit that Plaintiff asserted that he mailed the letter on December 26, 2009.  Deny that CCS has independent record of receipt.**

(11)    Defendant received this letter on December 29, 2009. *See* Plaintiff's Affidavit and Exhibit B.

**<u>RESPONSE:</u> Deny that CCS has independent record of receipt.**

6567250v1 900715 65872

     c.     <u>CCS' Response in Opposition to Plaintiff's Motion for Summary Judgment</u> [ECF #24] raises factual issues about the sufficiency of Plaintiff's alleged letter that was sent to CCS, citing, *inter alia*, that Sengenberger did not cite the account number or his correct address in the allegedly sent letter.  (*See*, ECF #24, p. 5).

     d.     <u>CCS' Reply in Support of its Motion for Summary Judgment (ECF #27, p. 7) states</u>:

> Sengenberger attempts to interject issues of fact by arguing that he revoked his prior express consent by sending a letter to CCS.  This argument should be rejected in that (1) CCS has no record of the [sic] receiving the letter (*See* Answer, #9, ¶¶ 18-20), (2) the letter does not contain any information as to the specific account number that he was allegedly disputing (*See* ECF #14-4) and (3) the letter also provides a wrong address as to where he allegedly resides and/or resides (see ZIP Code on letter – ECF #14-4).  It is Plaintiff's burden to prove that revocation occurred and based on the above facts, Sengenber has not done so.  Therefore, summary judgment in favor of CCS is appropriate.

(ECF #27, p. 7)

As stated in CCS' answer, statement of facts, response to plaintiff's statement of facts, response in opposition to plaintiff's motion for summary judgment and CCS reply in support of its motion for summary judgment, CCS does not show any receipt of the letter that was presented to the Court on Plaintiff's Motion for Summary Judgment.  While Plaintiff states that he mailed it and provided a green card of service, that does not mean that CCS is precluded from challenging the validity of the mailing – or what was purportedly mailed.  Here, maybe an envelope was mailed, however, there is a question of fact as to what was delivered in that envelope and factual issues remain as to if this specific letter was sent and received by CCS.  Moreover, as pointed out in the briefs, the letter that was purportedly sent did not include all information for CCS to locate Sengenberger's account (i.e. it had no account number, Plaintiff

6567250v1 900715 65872

provided wrong address).  This is relevant because it goes to the adequacy and applicability of the alleged revocation of consent.

Furthermore, Bruce Shapiro, CCS' Senior Vice President of Operations, provided a Declaration stating that he reviewed CCS's records in this matter.  (ECF #18-1).  What is apparent in that Declaration is that nothing is stated about a dispute letter sent by Plaintiff to CCS.  That is because CCS does not have a record of a letter sent by Plaintiff to CCS.

In the event that the Court found that CCS' calls were made in "willful or knowing" violation of the TCPA because CCS contacted Plaintiff after a purported revocation of consent, which CCS suspects that the Court did, the Court did not consider and/or weigh all of the evidence before it.  Therefore, the finding of "wilful or knowing" violations must be reversed.

As detailed above, CCS consistently provided evidence and arguments to combat that assertion that CCS "willfully or knowingly" made the calls after a purported receipt and acknowledgment of the purported revocation letter (namely, CCS does not have a record of receipt of the purported revocation letter).  At most and in the light most favorable to Plaintiff, the evidence shows that (1) Plaintiff sent a cease letter to CCS, (2) CCS received that letter, (3) CCS' records do not show receipt of the letter and (4) for some unknown reason CCS continued to call Plaintiff after receipt of the letter.

Assuming, *arguendo*, that the cease letter was sent by Plaintiff and received by CCS, there has to be another affirmative act or omission on the part of CCS to quantify its conduct as "willful or knowing" behavior.  That is simply not the case here.  At most, CCS' behavior could be classified as a mistake and/or negligence for failing to document an alleged dispute/revocation letter.  The evidence presented to the Court does not show that intentional and/or knowing phone calls were made by CCS when it knew of and acknowledged a dispute letter by Plaintiff.  From

8

the first pleading by CCS in this matter, CCS has asserted that it had no record of the dispute letter. (ECF #9, ¶¶ 18-20). Therefore, the Court's finding that CCS's violations were committed "willfully or knowingly" must be reversed or, at a minimum, this matter should be brought to trial to determine if the purported violations in Counts Nineteen through Twenty-Six were committed "willfully or knowingly."

**2.      The Record Does Not Contain Any Evidence That Demonstrates That CCS "Willfully Or Knowingly" Violated FCC Regulations, Therefore This Court Should Reconsider Its Findings (If Applicable).**

No evidence has been produced by Plaintiff to support a "willful or knowing" violation of 47 C.F.R. 64.1200(b)(1). Instead, all that was presented was factual allegations state that CCS identified itself as "Credit Collection Services" when it called Plaintiff and that CCS did not provide its legal name – "Credit Control Services, Inc." in its messages. Therefore, if the Court found that CCS "willfully or knowingly" violated the FCC Regulations, it was an error and the Court's finding that CCS's violations were committed "willfully or knowingly" must be reversed or this matter should be brought to trial to determine if the purported violations were committed "willfully or knowingly."

**3.      The Distinction Will Have An Impact On Damages.**

The damages provision that is asserted here is 47 U.S.C. § 227(b)(3). 47 U.S.C. § 227(b)(3) provides:

> (3)  PRIVATE RIGHT OF ACTION. – A person or entity may, if otherwise permitted by the laws or rules of a court of a State, bring an appropriate court of that State—
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

6567250v1  900715  65872

(C) both such actions.

> If the court finds that the defendant willfully or knowingly violated
> this subsection or the regulations prescribed under this subsection,
> the court may, in its discretion, increase the amount of the award to
> an amount equal to not more than 3 times the amount available
> under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3) (emphasis added).

Recently, the Southern District of Ohio addressed whether any purported damages under claims involving 47 U.S.C. § 227(b) should be addressed on a per call as opposed to a per violation basis. *See Charvat v. NMP, LLC*, 2010 WL 127590 (S.D. Ohio – Mar. 31, 2010). The *Charvat* opinion held that violations under § 227(b) of the TCPA should be calculated on a per call, not per violation method. Here, all of Plaintiff's alleged violations arise through § 227(b)(1), namely counts Nineteen through Twenty-Six arise directly under § 227(b) and counts Twenty-Seven through Thirty-Five arise through § 227(b)(2) via the FCC's proscribed regulations contained in 47 CFR 64.1200(b)(1). Thus, the alleged violations all occur under § 227(b).

The *Charvat* court explicitly held that alleged violations under § 227(b) are to be calculated under a per call basis. *See Charvat v. NMP, LLC*, 2010 WL 127590. Therefore, at most Plaintiff can recover on 9 calls at $500 per call (if there is a violation). That amount may be trebled if the court finds wilful or knowing violation of § 227(b). In that case, the court may, in its discretion, increase the amount of the award equal to not more than 3 times the amount available.

CCS seeks clarification as to whether the Court's Order as to what violations the Court found were committed "willfully or knowingly" by CCS. This distinction is critical to this matter because it will determine as to how the Parties move forward from this point. If the Court found that the "wilful or knowing" violations arose out of the purported revocation letter, CCS

10

believes that the Court's ruling was in error and that the finding must be reconsidered.  Under this scenario, CCS would argue that the damages would be calculated under a $500 per call method.  Alternatively, if the Court found that the "wilful or knowing" violations occurred as a result of CCS not providing its legal name in its pre-recorded messages, CCS believes that the Court's ruling was in error and that the finding must be reconsidered because no evidence was presented by Plaintiff.  This Court must clarify its findings contained in ECF #30.  Once that is completed, CCS believes it has bases for reconsideration of the Court's Order.  Until ECF #30 is clarified, the Parties can not move forward with the litigation and move toward determining the purported damages under 47 U.S.C. § 227(b)(3).

## IV.    CONCLUSION

For all of the reasons stated above, Credit Control Services, Inc. d/b/a Credit Collection Services respectfully requests that this Court clarify the memorandum opinion and order (ECF #30) entered on May 5, 2010 and state whether the alleged violations of the Telephone Consumer Protection Act were made "willfully or knowingly" by CCS because:

> (1) CCS contacted Plaintiff after a purported revocation of consent
> to be contacted, or
>
> (2) CCS did not provide its legal name "Credit Control Services,
> Inc." in its pre-recorded messages.

In the event of the former, CCS respectfully requests that this Court, pursuant to Federal Rule of Civil Procedure 59(e), reconsider its finding that the alleged violations of the TCPA were committed "willfully or knowingly."  CSS finally requests any further relief that this Court deems just and appropriate.

6567250v1  900715  65872

Respectfully submitted,

CREDIT   CONTROL   SERVICES,   INC.   d/b/a
CREDIT COLLECTION SERVICES

BY:  s/ *Daniel R. Degen*
One of Its Attorneys

David M. Schultz
Daniel R. Degen
Hinshaw & Culbertson LLP
222 North LaSalle – Ste. 300
Chicago, IL  60601
(312)704-3000

12

6567250v1  900715  65872

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **June 2, 2010**, I electronically filed the above and foregoing **Defendant's Motion to Clarify and/or Reconsider Memorandum Opinion Order (ECF #30)** with the Clerk of the U.S. District Court, using the CM/ECF system reflecting service of to be served on all parties of record.

HINSHAW & CULBERTSON LLP.

s/_____*Daniel R. Degen*_____
Daniel R. Degen

David M. Schultz
Daniel R. Degen
Hinshaw & Culbertson LLP
222 North LaSalle – Ste. 300
Chicago, IL  60601
(312)704-3000
(312)704-3001 (facsimile)
ddegen@hinshawlaw.com

6567250v1  900715  65872